[No. A070325. First Dist., Div. Three. Dec. 16, 1996.]

RICHARD GOSVENER, Plaintiff and Appellant, v.
COASTAL CORPORATION et al., Defendants and Respondents.

COUNSEL

Hagelshaw & Cole and R. Lee Hagelshaw for Plaintiff and Appellant.

Ballard, Rosenberg & Golper, Kenneth R. Ballard, Jonathan S. Rosenberg and Henry Josefsberg for Defendants and Respondents.

OPINION

WALKER, J.—Appellant Richard Gosvener brought this action for wrongful discharge against his former employer, respondent Pacific Refining Company (Pacific) and its parent company, Coastal Corporation (Coastal). Appellant contended he was illegally discharged due to his alcohol abuse problem, and that Pacific failed to provide reasonable accommodation for his alcohol problem in violation of California laws and public policy barring discrimination against alcoholics. The trial court granted summary judgment against appellant's claims. We affirm, because there were no material facts in dispute, and the record demonstrates appellant was properly discharged from his job supervising a chemical refinery after his employer made numerous unsuccessful efforts to accommodate appellant's need for alcoholism treatment, but appellant continued to abuse alcohol.

## I. FACTS AND PROCEDURAL HISTORY

The relevant facts are not in dispute. Appellant was hired by Wycon Chemical Company (Wycon), a subsidiary of respondent Coastal, in 1973. In

1976, he began working at a refinery in Hercules, California, which was operated by respondent Pacific, another subsidiary of Coastal. Appellant became a shift supervisor in 1982. He was one of four regular shift supervisors at the refinery, which for safety reasons must be staffed at all times, and he worked a schedule of four consecutive twelve-hour shifts, followed by four days off.

When appellant was the shift supervisor on duty for a night or weekend shift, he was the only supervisor in charge of the refinery. He was then responsible for all the safety issues which might arise from the operation of the refinery, which adjoins a residential neighborhood.

Appellant had a generally good work record until 1991, when he checked himself into a hospital for alcohol detoxification. Appellant told his supervisor that he had an alcohol abuse problem and a drug problem related to the abuse of methamphetamine. Pacific referred appellant to a private clinic, provided money for treatment by a private physician, reassigned appellant temporarily to a less stressful position while continuing his higher rate of pay as a shift supervisor, and cleared appellant to return to work while undergoing therapy.

These accommodations by Pacific for appellant's attempt to deal with his alcohol problem were memorialized by appellant and Pacific in a written agreement, the confidential "Memorandum of Agreement" which was executed in November 1991 (the 1991 Agreement). The 1991 Agreement stated that appellant held a "safety-sensitive" position at the refinery, and that Pacific was concerned for the safety and welfare of appellant, but was also concerned for the safety of his coworkers and the residents of the surrounding community. The 1991 Agreement stated that appellant's continued employment was dependent upon his success in dealing with his substance abuse problem, and required appellant to successfully complete a substance abuse program. The agreement stated that appellant would be subject to unannounced drug and alcohol testing for a period of up to two years, and that a positive test result, or a failure to participate in a substance abuse program, "will result" in "disciplinary action, up to and including termination."

Over the next year, appellant seemed to make progress in dealing with his substance abuse problem, and he passed random drug tests. However, in early 1993, appellant received a formal written reprimand and disciplinary suspension as a result of a disturbing safety-related incident, which had occurred in October 1992 and had been subsequently discovered by management, in which appellant allowed work to proceed on an unsafe furnace

which had not been completely depressured. Appellant allowed the issuance of a "hot work" permit for the furnace work, did not properly investigate or make a report to his own management, and instructed his workers to "keep quiet" about the unsafe conditions in a subsequent "coverup" designed to prevent management from learning of the safety problem. Appellant's formal written reprimand and disciplinary suspension also warned him that any further instances of "other inappropriate supervisory behavior will result in further discipline up to and including discharge."

Appellant told his supervisor in 1993 that he was again having a serious alcohol abuse problem. When appellant reported to work on June 24, 1993, he told Paul Miller, Pacific's vice-president and general manager of refining, that he had been binge drinking again for the past "couple" of months. Appellant also appeared to Miller to be under the influence of alcohol; appellant was wearing dark glasses indoors and his eyes were bloodshot. Miller believed appellant could be discharged on the spot for being at work while under the influence and for being in violation of the 1991 Agreement, but he decided to give appellant one last chance.

Appellant was temporarily relieved of his duties, and on July 2, 1993, the parties entered into yet another "Memorandum of Agreement" (the 1993 Agreement), which was designed to give appellant a last chance to come back to work and save his job. The 1993 Agreement stated that appellant "must" meet a number of new conditions in order to keep his job, and that failure to meet any of these conditions could lead to "disciplinary action, up to and including termination." The required conditions included the following: "You must maintain an exemplary attendance record. Any absence must be verified. [¶] You must remain drug and alcohol free. [¶] You must be fit for work. You will be asked to submit to random substance testing for 36 months. [¶] You must develop and follow a treatment program."

Appellant developed a treatment program in consultation with his health provider, Kaiser Permanente, and a consultant hired by his employer. The program required that appellant attend a minimum of five substance abuse meetings per week, three Kaiser "Relapse Group" sessions per week, and "12-step" meetings on days when appellant did not attend Relapse Group meetings. Appellant also sought minor modifications to this program to give him more flexibility, and Pacific agreed in August 1993 that appellant could attend two, rather than three, Relapse Group meetings per week, and less than five meetings per week if appellant gave prior notice that he needed an adjustment in order to harmonize better with his work schedule. This August 1993 modified agreement also stated, however, that such deviations should be an "infrequent occurrence"; it required weekly documentation of appellant's compliance; and it again warned appellant that "[a]s discussed, nonadherence to the spirit of the treatment plan could result in disciplinary action up to and including termination."

Appellant, however, did not stay away from alcohol. In October 1993, appellant missed four days of work due to what he said was the "flu." In November, he missed another four days and said it was due to the "flu." In the first week of January 1994, appellant had missed yet another three days due to what he said was "flu," when he was called at home by his supervisor, Guy Young. Young concluded that appellant was again under the influence of alcohol, because appellant sounded groggy; appellant attempted to become more coherent but then his phone went dead; when Young called back he could only reach appellant's answering machine.

Appellant called Young back the next day. Appellant still claimed to have the "flu." He also told Young that he had been under the influence of "Thera-flu" and sleeping pills prescribed for his girlfriend when Young had called the previous day. Young told appellant to call him back later that day, but appellant did not do so.

On January 6, 1994, Young discussed these alcohol-related issues with appellant and warned him that appellant's job was in jeopardy. Appellant was suspended from employment, and returned the next day for a meeting with Young and William Kloeblen, Pacific's employee relations director, who told appellant he was being discharged. Kloeblen told appellant that he had violated the provisions of his back to work agreements, had failed to maintain "exemplary" work attendance, and had not attended the required number of therapy sessions. Appellant admitted in this meeting that he had started drinking again, and indicated that at least the three days he had missed work in January were due to binge drinking, not the "flu" as he had previously reported. Appellant asked for yet another chance to get his job back by attending another treatment program on an inpatient basis, but appellant was told it was now too late and that the discharge would not be rescinded, although appellant should attend such a program on his own if he wished.

Appellant then filed this action against Pacific and its corporate parent, Coastal. In his first amended complaint, appellant alleged that his discharge constituted breach of contract, breach of the covenant of good faith and fair dealing; discharge in violation of public policy; intentional infliction of "emotional distress"; and discrimination in violation of the California Fair Employment and Housing Act (FEHA).

The trial court entered summary judgment against appellant and in favor of respondents on April 10, 1995, concluding that there were no relevant and disputed issues of fact which would indicate that appellant was illegally discriminated against based upon his alcohol problem, or which would indicate that his employer lacked good cause to discharge appellant.

## II. DISCUSSION

After independent review of the record, we affirm the trial court's order granting summary judgment.

### A. *Standard of Review*

█ In an appeal from a judgment of dismissal after an order granting summary judgment in an employment case such as this one, we review the record de novo. (*Romero* v. *American President Lines, Ltd.* (1995) 38 Cal.App.4th 1199, 1202-1203 [45 Cal.Rptr.2d 421].) We must independently determine whether the defendants were entitled to judgment as a matter of law, and must resolve any relevant factual disputes in favor of the appellant, although we decide legal issues de novo. (*Ibid.*) "Of course, once a party bears the initial burden of demonstrating an entitlement to [summary] judgment as a matter of law, the opposing party may not defeat summary judgment by attempting to generate a factual dispute as to immaterial issues[.]" (*Id.* at p. 1203.) "The presence of a factual dispute will not defeat a motion for summary judgment unless the fact in dispute is a material one." (*Saldana* v. *Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1518 [285 Cal.Rptr. 385]; accord, *Banks* v. *Dominican College* (1995) 35 Cal.App.4th 1545, 1551 [42 Cal.Rptr.2d 110] (*Banks*).)

### B. *Discharge From Employment Due to Continued Alcohol Abuse*

Although California cases on the subject are sparse, numerous federal appellate decisions hold summary judgment is proper in cases such as this one, where an employer discharges an employee whose alcohol abuse continued despite reasonable but unsuccessful attempts by the employer to encourage and accommodate a recovery from alcoholism. For instance, in *Fuller* v. *Frank* (9th Cir. 1990) 916 F.2d 558, 561-562 [122 A.L.R.Fed. 699] (*Fuller*), the Ninth Circuit affirmed an order granting summary judgment against the claims of a California postal employee who persisted in the abuse of alcohol, despite repeated unsuccessful attempts by his employer to accommodate his alcohol problem and bring about a recovery. As the *Fuller* court correctly held, an employee who has been reasonably accommodated by being allowed to try repeatedly but unsuccessfully to cure himself through programs designed to aid recovery from alcoholism, cannot gain yet another last chance despite prior warnings, and cannot stave off discharge indefinitely by attempting to enter into yet another course of treatment after each relapse: "Fuller's previous attempts at recovery had not been successful and there was no guarantee that this one would have been successful either. In addition, if Fuller's approach were the law, an employee could conceivably

forestall dismissal indefinitely by repeatedly entering treatment whenever dismissal becomes imminent due to a relapse. ▆▆▆▆ The last chance agreement would have become meaningless had Fuller been allowed another chance to obtain treatment after having been informed that further violations would not be tolerated." (*Fuller, supra,* 916 F.2d at p. 562.)[1]

Likewise, in *Leary* v. *Dalton* (1st Cir. 1995) 58 F.3d 748, 753, the First Circuit affirmed the granting of summary judgment against the claims of a federal employee who alleged he had been wrongly discharged as a result of unexcused absences totaling 12 days, where the absences resulted from his incarceration due to the consequences of alcoholism. Similarly, in *Newland* v. *Dalton* (9th Cir. 1996) 81 F.3d 904, 906, the Ninth Circuit rejected the claims of a civilian employee of the United States Navy based in California, who contended he could not be discharged for misconduct after a "drunken rampage" because the misconduct resulted from or was linked to his alcoholism.

▆▆ Under these precedents, appellant cannot prevail. There is no relevant question of fact in dispute, and the issue is solely one of law. Appellant admits as he must that his employer repeatedly granted him reasonable accommodations in his attempt to recover from alcoholism. He also cannot dispute that he began drinking again after every such accommodation, violating numerous agreements designed to give him another chance at recovery, and he then lied to his employer regarding the reasons for his absence from work. It is also highly significant in this case that we are dealing with a supervisor, and a "safety-sensitive" position—that of the only supervisor on duty at crucial times at a dangerous chemical refinery which is located in a residential area. It would hardly be consistent with public safety to hold that Pacific must leave its refinery in the sole hands of an apparently incurable alcoholic who had relapsed on numerous occasions, who had lied to his employer, and who was devoting his days to binge drinking instead of reporting to work as scheduled. On these uncontested facts, summary judgment was proper. (See *Fuller, supra,* 916 F.2d at p. 562 and fn. 6.)

In addition, there are numerous procedural difficulties with appellant's claim that his discharge constituted a violation of the FEHA because it was related to his alcoholism. Appellant attempted to plead this cause of action as one for "medical condition" discrimination under the FEHA, but for

---

[1]Although *Fuller* and most of the other federal cases were decided under the federal Rehabilitation Act of 1973 (29 U.S.C. § 791) rather than California law, we may follow Rehabilitation Act cases in the absence of California authority, except where the provisions of the Rehabilitation Act would differ from state law by imposing more rigorous requirements on the federal government than state law would impose upon private employers. (See *Gonzalez* v. *State Personnel Bd.* (1995) 33 Cal.App.4th 422, 432 [39 Cal.Rptr.2d 282].)

FEHA purposes the term "medical condition" is limited to cancer-related medical conditions, which appellant does not suffer from. (See Gov. Code, § 12926, subd. (h); *American National Ins. Co.* v. *Fair Employment & Housing Com.* (1982) 32 Cal.3d 603, 610 [186 Cal.Rptr. 345, 651 P.2d 1151].) However, because alcoholism could be a covered *disability* under the FEHA, which incorporates the definition of disability listed in the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111) (ADA), we have addressed the matter on the merits.

In addition, we note that appellant admitted at his deposition that his alcoholism was reasonably accommodated by his employer, but later sought to retract this admission by belatedly "correcting" his testimony to try to say the opposite. "We do not take kindly to counsel's having [appellant] attempt . . . to repudiate or contradict [his] sworn deposition testimony. The declaration created no genuine issue of fact." (*Lopez* v. *General Motors Corp.* (9th Cir. 1983) 697 F.2d 1328, 1333.) We are entitled to ignore such attempts to contradict previous deposition testimony, as was the trial court on summary judgment (see *Roth* v. *Rhodes* (1994) 25 Cal.App.4th 530, 545 [30 Cal.Rptr.2d 706]), but in any event we conclude appellant's alcoholism was reasonably accommodated here, as a matter of law. (See *Fuller, supra,* 916 F.2d at p. 562 and fn. 6.)

It is unfortunate that appellant suffered from alcoholism and continually relapsed into binge drinking which prevented him from working, but the employer's duty to accommodate such a disabling condition is not unlimited, and an employer cannot be an insurer of recovery. Nor should an employer be required to tolerate unsafe conditions, or be forced to enable substance abuse to continue indefinitely. "In the context of alcoholism, 'reasonable accommodation' must be limited in scope; continued 'accommodation' would simply enable an alcoholic to continue his or her drinking." (*Fuller, supra,* 916 F.2d at p. 561.) Appellant's argument is that even though his employer accommodated his alcohol-related disability reasonably when he first told his employer of the problem in 1991, and again when he told his employer about his relapse in 1993, it could not discharge him after another relapse in 1994, despite prior agreements and warnings that it would do so. The law against disability discrimination does not require such a result. (*Ibid.*)

C.   *Claims of Breach of Contract and Breach of Covenant*

Appellant's arguments also fare no better when he repeats them in the context of common law claims for breach of contract, or breach of covenant, where his allegations mirror his FEHA claims of disability discrimination. In

this context, appellant alleged that his discharge violated (1) an "express contract" based upon appellant's interpretation of unspecified oral statements, and the terms of the 1991 Agreement and the 1993 Agreement, both of which expressly provided and warned appellant that he could be discharged for continued alcohol abuse; (2) an implied contract not to terminate him except for good cause (see, e.g., *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311 [171 Cal.Rptr. 917] (*Pugh*); *Walker* v. *Blue Cross of California* (1992) 4 Cal.App.4th 985 [6 Cal.Rptr.2d 184] (*Walker*); and (3) the implied covenant of good faith and fair dealing which is implied by law in all contracts. (See *Burton* v. *Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972 [243 Cal.Rptr. 277] (*Burton*).)

First, as to the claims of violation of an express contract, the trial court properly granted summary judgment because the undisputed facts indicated appellant had not complied with the express contractual terms agreed to by the parties in the 1991 Agreement and the 1993 Agreement. Pacific did not violate those agreements by exercising its contractual rights to discharge appellant if he did not maintain an exemplary attendance record, did not take only absences which could be verified, did not remain drug and alcohol free, was not fit for work, and did not follow the terms of his substance abuse treatment program. The evidence of record showed Pacific properly exercised its contractual rights to terminate appellant's employment, after he breached the express terms of that contract. Pacific did not breach its contract with appellant, and summary judgment on appellant's express contract claim was proper. (See *Moore* v. *May Dept. Stores Co.* (1990) 222 Cal.App.3d 836, 840 [271 Cal.Rptr. 841] (*Moore*).)

As to an implied in fact contract not to terminate except for good cause based upon the theory of *Pugh, supra,* 116 Cal.App.3d 311, appellant argues he enjoyed many of the attributes identified in that case and in the decision of this court (Division Three) in *Walker, supra,* 4 Cal.App.4th 985, as factors pointing to the creation of such an implied promise—such as longevity of service, and so on. However, although the *Pugh* factors might have pointed to the existence of such an implied contract prior to 1991 when the parties entered into the express contract embodied in the 1991 Agreement, or prior to 1993 when the parties entered into the 1993 Agreement, it is very difficult to see on this record how such an implied contract could continue to exist in the face of the express terms of the 1991 Agreement and 1993 Agreement which embrace the same subject matter, and would constitute a modification

and repeal of any previous implied contract to the contrary.[2] More critically, as the trial court correctly concluded on summary judgment, Pacific did not lack good cause to discharge appellant in light of the undisputed facts showing that he did not maintain an exemplary attendance record, did not take only absences which could be verified, did not remain drug and alcohol free, was not fit for work, and did not follow the terms of his substance abuse treatment program. (See *Moore, supra,* 222 Cal.App.3d at p. 840.)[3]

"Appellant's contentions regarding . . . breach of the implied covenant of good faith and fair dealing must also fail." (*Moore, supra,* 222 Cal.App.3d at p. 840, fn. omitted.) If the covenant of good faith and fair dealing implied by law into all contracts protected anything here, it protected the express terms of the 1991 Agreement and the 1993 Agreement which provided for discharge if appellant did not comply with their terms, and which clearly warned appellant of the consequences of his noncompliance with this express contract. "Nor could there have been any valid claims for . . . breach of a covenant implied by law . . . when the evidence shows [respondent Pacific] complied with the terms of the contract and did not engage in any action extraneous to the contract which would frustrate appellant's assumed contractual rights; nor did it breach any duty owed to appellant. [Citations.]" (*Banks, supra,* 35 Cal.App.4th at p. 1553.) "The trial court properly granted summary judgment, since appellant raised no triable issues of fact [showing] breach of the implied covenant of good faith and fair dealing." (*Burton, supra,* 197 Cal.App.3d at p. 979, fn. omitted.)

## D.  *Claimed Termination in Violation of Public Policy*

■   Appellant also contends his discharge violated the public policy of California as expressed in Labor Code section 1025 (section 1025), which provides: "Every private employer regularly employing 25 or more employees shall reasonably accommodate any employee who wishes to voluntarily enter and participate in an alcohol or drug rehabilitation program, provided that this reasonable accommodation does not impose an undue hardship on

[2]Pacific also contends no such implied in fact promise could exist because appellant signed a form stating that he was employed at will, at the time he was hired by Wycon in 1973. However, appellant was not employed by Wycon at the time of his discharge; he was employed by Pacific, a subsidiary of Wycon's corporate parent. Moreover, here the parties subsequently entered into express written contracts, the 1991 and 1993 Agreements, so appellant's 1973 agreement with Wycon was irrelevant.

[3]In addition, appellant was employed by respondent Pacific, not respondent Coastal, and Coastal could not be liable for breach of his employment contract. However, as we are affirming the judgment on the merits in any event, we need not address further the issue of appellant's misjoinder of Coastal.

the employer. [¶] Nothing in this chapter shall be construed to prohibit an employer from refusing to hire, or discharging an employee who, because of the employee's current use of alcohol or drugs, is unable to perform his or her duties, or cannot perform the duties in a manner which would not endanger his or her health or safety or the health or safety of others."

Section 1025 has no application to this case, and adds nothing to appellant's unavailing claims that his disability was not reasonably accommodated. This is not a case in which Pacific failed to reasonably accommodate appellant by refusing to allow him to enroll in any treatment program he asked for during the course of his employment. In fact, appellant enrolled in two such programs, and Pacific aided him in his attempts to recover. Appellant appears to argue that section 1025 might apply because, after those programs obviously failed and he was told he was being discharged, he asked to be allowed to attend yet another treatment program on an inpatient basis, and he was then told it was too late. We have previously observed that an employee may not force an employer to rescind a discharge by seeking to attend another treatment program, after previous programs have failed, when the employee has been warned that discharge will result from such failures. Appellant also contends he was not reasonably accommodated because he had a large sick leave balance outstanding at the time of his discharge. He implies that he should have been allowed to continue his binge drinking and ineffectually pursue recovery until his sick leave balance was exhausted. However, sick leave is for sickness, not drinking, and an employer need not resort to the unreasonable accommodation of allowing an employee to use up his sick leave by abusing alcohol. Moreover, section 1025 by its terms does not prevent a discharge where, as here, the employee is "adversely affected by [current] alcohol use." (*Pettus* v. *Cole* (1996) 49 Cal.App.4th 402, 460, fn. 40 [57 Cal.Rptr.2d 46].) Appellant was unable to come to work at the refinery because he was too drunk to even talk on the phone; clearly he was adversely affected by alcohol abuse, and section 1025 did not bar his discharge.

E.   *"Emotional Distress"*

Finally, appellant contends Pacific could be liable for the intentional infliction of "emotional distress" on him. However, there could be no such liability for infliction of emotional distress here, because the actions of respondents, in exercising their statutory and contractual right to terminate appellant's employment if he continued to abuse alcohol despite their reasonable efforts to the contrary, were not wrongful or outrageous, as a matter of law. (See *McGough* v. *University of San Francisco* (1989) 214 Cal.App.3d

1577, 1587-1588 [263 Cal.Rptr. 404]; *Tollefson* v. *Roman Catholic Bishop* (1990) 219 Cal.App.3d 843, 858 [268 Cal.Rptr. 550].)

### III. DISPOSITION

The judgment of dismissal is affirmed.

Corrigan, Acting P. J., and Parrilli, J., concurred.