[No. E024523. Fourth Dist., Div. Two. Nov. 14, 2000.]

TEG DIFFEY, Plaintiff and Appellant, v.
RIVERSIDE COUNTY SHERIFF'S DEPARTMENT et al., Defendants
and Appellants.

## COUNSEL

Quinn Emanuel Urquhart Oliver & Hedges, Samuel B. Shepherd and Michael E. Williams for Plaintiff and Appellant.

Kinkle, Rodiger and Spriggs, Bruce E. Disenhouse; Greines, Martin, Stein & Richland, Timothy T. Coates and Barry M. Wolf for Defendants and Appellants.

## OPINION

## GAUT, J.—

### 1. *Introduction*

The Riverside County Sheriff's Department (County) would not hire Teg Diffey as a deputy sheriff because he is color-blind. The more accurate diagnostic term for Diffey's condition is "deficient color vision" or "color-deficient."

Diffey sued defendants—the County, and a nurse, Rebecca Perkins—under FEHA (the California Fair Employment and Housing Act, Gov. Code, § 12900 et seq.) and the ADA (the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213) for discrimination and retaliation. After Diffey's offer of proof, the court granted a directed verdict against Diffey on his retaliation claim. Diffey then won a jury verdict of $307,244 on his discrimination claims. After trial, the court granted defendants' motion for new trial on Diffey's discrimination claims on the grounds that the jury had rendered an inconsistent verdict and for instructional error.

Diffey appeals from the trial court's orders granting defendants' motions for the directed verdict and new trial. Defendants cross-appeal from the trial court's order denying their motion for judgment notwithstanding the verdict (JNOV).

We hold there is not substantial evidence to support the jury's finding that the County regarded plaintiff as disabled and reverse the trial court's order denying defendants' motion for JNOV. Our decision on this issue eliminates the other issues raised by the parties.

## 2. *Facts*

As part of its requirements for employment, the sheriff's department follows POST (Police Officer Standards and Training) guidelines. POST is a state-funded organization designed to insure professional standards in law enforcement. Penal Code section 13500 et seq. describes POST's role in setting standards and guidelines pertinent to the selection and training of peace officers.

POST recommends testing the color vision of deputy sheriff candidates, using two kinds of color vision tests: (1) a pseudoisochromatic plate (PIP) or Ishihara test that accurately detects color deficiency but does not measure the degree of severity and (2) the Farnsworth D-15 that screens out more serious color deficiencies. The Ishihara test consists of different colored dots that make up a pattern. The Farnsworth D-15 involves placing colored caps in sequence.

Diffey failed both color tests. Diffey is affected by protanopia, the inability to see red. He has "extensive color confusion" and a "severe color vision deficit." After Diffey failed the County-administered tests, an optometrist fitted him with the proverbial rose-colored glasses: a contact lens tinted dark-red called the "X-Chrom" lens. Using the X-Chrom lens, Diffey could pass the Farnsworth D-15 test. But the 1994 POST guidelines preclude using the X-Chrom lens for color vision testing. A test conducted while using the X-Chrom lens is invalid under POST.

POST guidelines recommend that a person who fails the Farnsworth D-15 test "be restricted from field duty requiring color identification and discrimination." Field duty is an essential part of a deputy sheriff's job and requires the ability to identify colors immediately and accurately.

Lieutenant Larry Grotefend is the commander in charge of the sheriff's personnel department. He testified that the County did not hire Diffey as a deputy sheriff because he did not pass the color tests and could not meet the POST standards for color vision testing.

Other pertinent facts will be discussed as necessary.

### 3. *Discussion*

In a case for disability discrimination, the threshold issue is whether the plaintiff has a disability. (42 U.S.C. § 12112(a); Gov. Code, § 12940, subd. (a); *Sutton v. United Air Lines, Inc.* (1999) 527 U.S. 471, 476-478 [119 S.Ct. 2139, 2144, 144 L.Ed.2d 450].) As set forth in BAJI No. 12.12, the first essential element of a claim for unlawful disability discrimination is that the plaintiff is disabled or regarded as disabled. (42 U.S.C. § 12102(2); Gov. Code, § 12926, subd. (k); *Real v. City of Compton* (1999) 73 Cal.App.4th 1407, 1410 [87 Cal.Rptr.2d 531].) The plaintiff has the burden to establish he has a disability. (*Olson v. General Elec. Astrospace* (3d Cir. 1996) 101 F.3d 947, 952.)

For reasons not readily apparent to the eyes of this court, at the behest of the trial court, the trial was conducted in four phases. The jury considered disability in the second phase after the jury had already decided issues in phase 1 involving bona fide occupational qualification (BFOQ) and reasonable accommodation. At the conclusion of phase 2, the jury decided Diffey was not disabled but the County regarded him as disabled. Phase 3 then involved plaintiff's retaliation claim and phase 4 concerned damages.

One of the posttrial motions made by defendants was for JNOV based on the argument that there was no evidence to support the jury's finding that the County regarded Diffey as disabled. The court denied that motion, citing the testimony of Lieutenant Grotefend: "I do believe there is testimony from which a reasonable jury could conclude the County's perception of plaintiff was different than reality in that Mr. Grotefend testified that not only that Mr. Diffey could not do patrol work, but Mr. Grotefend's perception of Mr. Diffey's color deficiency was so great that he thought Mr. Diffey could not provide courthouse security, could not serve court papers, could not guard prisoners. That view or that perception, as expressed, does—I think would provide a reasonable jury with a reasonable basis."

The appellate standard governing review of an order denying a motion for JNOV is whether substantial evidence supports the jury verdict. (*Shapiro v. Prudential Property & Casualty Co.* (1997) 52 Cal.App.4th 722, 730 [60 Cal.Rptr.2d 698].) We examine the record in a light most favorable to the respondent. (*Stenseth v. Wells Fargo Bank* (1995) 41 Cal.App.4th 457, 464 [48 Cal.Rptr.2d 192].) Defendants argue there is no substantial evidence to support the jury's special verdict finding the County regarded Diffey as having a disability. We agree.

Both the ADA and FEHA require that an impairment, real or perceived, must substantially limit a major life activity in order to qualify as

a disability. (*Hobson v. Raychem Corp.* (1999) 73 Cal.App.4th 614, 628 [86 Cal.Rptr.2d 497].) The jury was instructed, based partly on BAJI No. 12.13, as to the meaning of disability:

" ' "Physical disability" is defined in the law as either:

'One, having a physiological disorder or condition that affects one or more body systems, including sense organs; and that substantially limits an individual's ability to participate in a major life activity; or;

'Two, being regarded as having a disorder or condition described in paragraph 1.

' "Major life activities" are functions such as caring for one's self performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

'The ability to participate in a major life activity is limited by a disorder or condition if the person is either unable to perform a major life activity that the average person can perform; or is significantly restricted as to the condition, manner, or duration under which he is able to perform a major life activity as compared to an average person.

'The major life activity of working is not defined as working at any one particular job. The term "working" in this context refers to employment generally.

■ 'While a refusal to hire someone for a specific job due to a physical condition may be considered as evidence that the business regarded the applicant as having a physical disability as defined in the law, such a refusal does not in and of itself constitute regarding the individual as having a legal disability. The test is not that the applicant was regarded as being unqualified for a particular job, but rather that the applicant was regarded as being substantially limited in his ability to participate in a major life activity.' "

In the present case, the major life functions of seeing and working are the only ones conceivably affected by Diffey's color blindness One federal district court case has concluded that color blindness is not a disability because the condition does not prohibit a person from performing the tasks of daily life. (*Hoppes v. Com. of PA., Fish and Boat Com'n* (M.D.Pa. 1998) 32 F.Supp.2d 770, 774.) Obviously the jury did not believe Diffey had proved any of his major life activities were substantially limited. The jury decided he was not disabled. In response to the special verdicts in phase 1 of

the trial, the jury also found that Diffey could perform the job of deputy sheriff with or without accommodation.[1]

■ Instead, the question on appeal is whether substantial evidence showed that the County regarded Diffey as disabled even if he was not. In *Sutton v. United Air Lines, Inc., supra,* 527 U.S. 471, 489-491 [119 S.Ct. 2139, 2150], interpreting the meaning of the "regarded as disabled" prong of the definition of disability, the Supreme Court recognized that a perception of disability can be as damaging a form of discrimination as an actual disability.

In *Sutton,* severely myopic twin sisters aspired to be global airline pilots. The court said about real and perceived disabilities: "In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. These misperceptions often 'resul[t] from stereotypic assumptions not truly indicative of . . . individual ability.' [Citation.]" The court repeated its previous statement that " 'society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment.' " It noted that the purpose of the "regarded-as" prong is to protect individuals rejected from a job because of the "myths, fears and stereotypes" associated with disabilities. In other words, in order to find a perceived disability, the perception must stem from a false idea about the existence of or the limiting effect of a disability. (*Sutton v. United Air Lines, Inc., supra,* 527 U.S. at p. 489 [119 S.Ct. at p. 2150].)

The *Sutton* court also recognized the right of employers to establish physical job requirements: "By its terms, the ADA allows employers to prefer some physical attributes over others and to establish physical criteria. An employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity. Accordingly, an employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment—such as one's height, build, or singing voice—are preferable to others, just as it is free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally

[1]The jury's responses to the special verdicts were as follows: "4. Are patrol duties an essential function of the job of deputy sheriff? Answer: YES 5. Can plaintiff, without any reasonable accommodation safely and efficiently perform patrol duties? Answer. YES 6. Can plaintiff with reasonable accommodation safely and efficiently perform patrol duties? Answer: YES"

suited for a job." (*Sutton v. United Air Lines, Inc., supra,* 527 U.S. at pp. 490-491 [119 S.Ct. at p. 2150].)

The *Sutton* court decided that the nearsighted twins were not disabled because their vision was correctable. Nor could they allege the airline regarded them as disabled because the airline would not hire them as global airline pilots. The court held that the airline's refusal to hire because of a vision requirement did not constitute a substantial limitation on the major life activity of working because the requirement involved only a single job. Nor would it constitute such a limitation if a "substantial number of airline carriers [had] similar vision requirements . . . . It is not enough to say that if the physical criteria of a single employer were *imputed* to all similar employers one would be regarded as substantially limited in the major life activity of working *only as a result of this imputation.* An otherwise valid job requirement, such as a height requirement [or color blindness], does not become invalid simply because it *would* limit a person's employment opportunities in a substantial way *if* it were adopted by a substantial number of employers." (*Sutton v. United Air Lines, Inc., supra,* 527 U.S. at pp. 493-494 [119 S.Ct. at pp. 2151-2152].)

The applicable standard of review requires us to indulge every reasonable inference supporting the jury's verdict in favor of Diffey. (*Gibbs v. American Airlines, Inc.* (1999) 74 Cal.App.4th 1, 7 [87 Cal.Rptr.2d 554].) But we have scoured the record and cannot find any evidence to support Diffey's contention that the County regarded his color deficiency as a disability rather than a valid job requirement.

Diffey points to testimony by Dr. James Bailey, an optometrist who testified as the County's expert on color deficiency, and Lieutenant Grotefend. Bailey testified that Diffey was severely color deficient and that it was a permanent condition that could not be corrected. He also testified that various jobs require the ability to identify colors. In phase one of the trial, both witnesses testified that Diffey would not be able to perform a range of deputy sheriff's patrol duties, including driving safely in an emergency situation, because of his condition. He could, however, engage in ordinary driving.

Dr. Ibrahim Sumarli, a county physician, testified that he determined Diffey was medically disqualified for deputy sheriff because he could not pass the Farnsworth D-15 test and meet the POST recommendations on color vision. Additionally, Rebecca Perkins, the defendant-nurse who tested Diffey when he failed, supposedly made the highly ambiguous and colloquial statement that he would " '. . . have to find another line of work.' "

In phase 2, Grotefend testified that Diffey could not perform the patrol, court, or correction functions of a deputy sheriff. Notwithstanding, Grotefend did not view Diffey as disabled; he just could not pass the POST-recommended color vision tests. Grotefend gave his opinion that a blind person would be disabled, not a color-blind person. But Grotefend did not think Diffey's ability to see was adversely affected or that he was prohibited from working except from the specific positions of deputy sheriff and correctional deputy. Grotefend testified that Diffey could qualify to perform 63 other jobs with the sheriff's department—but not the job of deputy sheriff.

Diffey himself testified in phases 1 and 2 of the trial that he saw himself as "color dumb" but not disabled. His color deficiency had never affected any aspect of his life except to prevent him from being hired as a sheriff's deputy.

Like the nearsighted Sutton twins, Diffey is not actually disabled. Nor is there evidence the County regarded him as disabled. Instead, the County did not find him qualified to be a deputy sheriff. But there is no evidence that the County's treatment of Diffey resulted from myths, fears or stereotypes about color blindness. Nor is there evidence that the County regarded Diffey's major life activity of seeing or working as substantially limited by his condition. Although Diffey's sight certainly was affected by his color deficiency, his "seeing" was not substantially limited. Some effect on vision, like blindness in one eye, does not create a disability per se. (*Albertson's, Inc. v. Kirkingburg* (1999) 527 U.S. 555, 565-567 [119 S.Ct. 2162, 2169, 144 L.Ed.2d 518].) The only limitation on "seeing" posed by Diffey's condition was that it precluded him from working as a deputy sheriff.

With respect to working as a major life activity, the evidence established that the County followed POST guidelines used to qualify deputy sheriff applicants. Many cases recognize the unique skills—including physical strength, mobility, and vision—required by police work. (*Daley v. Koch* (2d Cir. 1989) 892 F.2d 212, 214-215; Marti, *911: How Will Police and Fire Departments Respond to Public Safety Needs and the Americans with Disabilities Act?* (1998-1999) 2 N.Y.U. J. of Legis. & Pub. Pol'y 37.) The evidence supported a finding that color vision was a valid job requirement for a deputy sheriff. And the jury concurred by finding that the color vision requirement used by the County is a bona fide occupational qualification for patrol duties.[2] No contrary evidence was presented.

Applying the reasoning of *Sutton*, a valid job requirement for a deputy sheriff does not translate into disability discrimination even if a substantial

---

[2]Had the jury decided the color vision requirement was not a BFOQ, this case would have presented the troubling outcome of a jury overriding established professional judgments about the proper qualifications for police work.

number of similar employers adopt it. A person is not substantially limited in the major life activity of working merely because he is prevented from working as a police officer. (*Bridges v. City of Bossier* (5th Cir. 1996) 92 F.3d 329, 334-335, citing *Daley v. Koch, supra*, 892 F.2d at pp. 215-216.) Even if Diffey is prohibited from working as a deputy sheriff throughout California, it does not mean that the County regarded him as disabled. On this point, we reject the statement made in *Real v. City of Compton, supra*, 73 Cal.App.4th at page 1419, that a police officer contending the city regarded him as disabled must "demonstrate that he was regarded as precluded from a broad class of jobs, such as the law enforcement field in general." Instead, we follow *Sutton*'s assertion that "[a]n otherwise valid job requirement . . . does not become invalid simply because it *would* limit a person's employment opportunities in a substantial way *if* it were adopted by a substantial number of employers." (*Sutton v. United Air Lines, Inc., supra*, 527 U.S. at pp. 493-494 [119 S.Ct. at p. 2152].)

The jury found Diffey was not disabled. The evidence presented at trial did not establish the County regarded him as disabled. Diffey does not have a disability under either prong of the test for whether a disability exists. He cannot claim the protections afforded by the ADA and FEHA for his discrimination or retaliation claims. Under these circumstances, the court should have granted defendants' motion for JNOV and entered judgment in favor of defendants.

### 4. *Disposition*

We reverse the trial court's order denying defendants' motion for JNOV and remand to the trial court for entry of judgment in favor of defendants. Defendants shall recover their costs on appeal.

Ramirez, P. J., and Richli, J., concurred.

The petition of appellant Teg Diffey for review by the Supreme Court was denied February 21, 2001.