109 Cal.Rptr.2d 543 (2001)
90 Cal.App.4th 1205
Marshall WITTKOPF, Plaintiff and Appellant,
v.
COUNTY OF LOS ANGELES, Defendant and Respondent.
No. B139304.
Court of Appeal, Second District, Division Seven.
July 24, 2001.
Review Granted October 10, 2001.
*545 Joseph M. Lovretovich and Christopher W. Olmsted, Woodland Hills, for Plaintiff and Appellant.
Gutierrez, Preciado & House, Calvin R. House, Pasadena; Greines, Martin, Stein & Richland, Martin Stein and Alison M. Turner, Beverly Hills, for Defendant and Respondent. *544

*546 SUMMARY
BOLAND, J.[*]
Appellant Marshall Wittkopf was employed by the County of Los Angeles until terminated in April 1998 for reasons he contends were discriminatory. On this appeal from grant of summary judgment in favor of the County, we hold: (1) the trial court erred in granting judgment in the County's favor on the ground that Wittkopf was not "substantially limited" in his ability to participate in a major life activity; (2) material factual issues remain as to whether the County was justified in terminating Wittkopf because he presented a danger to himself, and whether promotion was a reasonable accommodation for Wittkopf s disability; and (3) Wittkopfs claim of discrimination with respect to the County's refusal to reinstate him in 1995 is time-barred.

FACTUAL AND PROCEDURAL BACKGROUND
For the last 18 of his 28 years of employment with the County, Wittkopf worked as a Senior Building and Equipment Maintenance Worker at the County's Department of Health Services. As the employee "in charge of the carpentry shop," Wittkopf's regular job duties included the repair and construction of new and existing buildings, all of which involved substantial electrical, equipment and plumbing repair, as well as carpentry, masonry and sheet metal work.
In October 1995, after cataract surgery, Wittkopf became "legally blind" in one eye as a result of complications from a postoperative infection. In November 1995, Wittkopf's doctor told the County he could not return to any job that required the use of both eyes. County administrators, including George Kolle, the personnel operations manager at the facility at which Wittkopf worked, determined Wittkopf would not be able to perform his old job, given his physician's restrictions. The County also told Wittkopf it was unable to find an alternative work assignment to accommodate his work restrictions. Soon thereafter, Wittkopf provided the County a letter from another of his doctors, Ronald Rosen, M.D., who said Wittkopf had made significant progress, and "should be allowed to return to full-time employment in his original position, without restriction."
Wittkopf returned to his original position in March 1996. Upon his return, Wittkopf assumed and was able to perform all his previous job responsibilities without any restrictions or accommodations for his impaired vision. It is undisputed that, upon and since his return, Wittkopf performed as efficiently as he did before his vision loss, and that he has experienced no problems using or operating any workplace tools or equipment. Wittkopfs supervisors agree he has done his job well, and that his monocular vision has not interfered with his ability to perform. Wittkopf received "very good" performance evaluations between March 1996 and April 1998. Wittkopfs manager, Bert Hayman, described Wittkopf as a "skillful craftsman" who had never demonstrated any performance problems, and said his vision impairment had not caused any accidents or created any dangerous conditions for himself or others. Wittkopfs other supervisors also shared that opinion.
At about the same time as he returned to work in 1996, Wittkopf filed a workers' compensation claim related to his vision *547 loss. That claim was settled in November 1997. Under the terms of that settlement, the County agreed to return Wittkopf to his original job at which he was already working, and Wittkopf agreed to waive his right to any additional compensation or rehabilitation services.
All went well until April 1998, when the County received an apparently unsolicited letter from Charles Aronberg, M.D., a physician to whom Wittkopf had been referred in connection with his workers' compensation action. Aronberg noted that the job description for Wittkopf's position included the performance of tasks such as electrical, masonry, plumbing, sheet metal and equipment repair, and carpentry. Aronberg said that, although such activities presented a significant risk to anyone who performed them, they should "not be performed, in any event, by a person who has sight in only one eye, such as Marshall Wittkopf." Aronberg said Wittkopfs job was simply "not suitable" for him.
Based solely on Aronberg's letter, the County removed Wittkopf from his position in order to protect his safety and to avoid exposing the County to liability. The County also told Wittkopf it could not transfer him to another position because, among its existing job vacancies, there was no alternative assignment compatible with his visual limitations.
Both before and at the time of his termination, Wittkopf spoke with Hayman and the facilities director, Brad Allen, about the possibility of receiving a promotion to the position currently held by Wittkopfs immediate supervisor, Gene Thorn, who was planning soon to retire. Hayman said Wittkopf was an "excellent candidate" for Thorn's job. Allen too believed that, as the most senior employee, Wittkopf was the likely successor to Thorn's position. However, at the time of his termination, Wittkopf was told he was not eligible for promotion because Thorn had not yet confirmed if or when he was retiring. Hayman also told Wittkopf that when Thorn did retire, the job would be posted, and that Wittkopf would have to qualify and compete for it. Thorn retired in June 1998, but his position was never posted. According to the County, the position was not posted because of hiring restrictions. Wittkopf claims the position was never posted because the County simply transferred a less senior employee into the job.
The County maintains Wittkopf was not eligible for Thorn's job, even if that position had been available in April 1998, because "about 35 percent of [Thorn's] duties were to carry [a] tool pouch and assist" with manual duties the County had already determined were too dangerous for Wittkopf. According to Wittkopf, Thorn's position was primarily an "office job," and did not involve much, if any, manual labor.
In July 1998, Wittkopf filed an administrative complaint with the Department of Fair Employment and Housing (DFEH), alleging he had been subjected to discrimination on the basis of his physical disability, and that the "most recent or continuing discrimination" had taken place on April 17, 1998, the date of his discharge.
After receiving his "Right to Sue" Notice from the DFEH, Wittkopf initiated this action. He alleges the County discriminated against and failed to accommodate him in violation of the Fair Employment and Housing Act, Government Code section 12940 (FEHA), between the Fall of 1995, when it first refused to reinstate him after his eye surgery and April 1998, when it refused to promote and fired him.
The County filed a motion for summary judgment or, in the alternative, summary adjudication. It argued Wittkopf could not prevail and was not physically disabled within the meaning of FEHA, because he *548 was not "substantially limited" in his ability to see or work, and had not been regarded as such by the County. The County also argued that, to the extent Wittkopfs discrimination action was based on the County's refusal to reinstate him in 1995, the action was barred because Wittkopf had failed to exhaust his administrative remedies with respect to that claim.
Relying primarily on case law decided under or in accordance with the Americans with Disabilities Act, 42 U.S.C. section 12101, et seq. (the "ADA"), the trial court granted the County's motion. It found that, because Wittkopfs ability to participate in the major life activities of seeing or working was not "substantially limited," he was not disabled within the meaning of FEHA. Judgment was entered in favor of the County. Wittkopf appeals.

DISCUSSION

1. The definition of "physical disability" under FEHA has never required a plaintiff to show that his physical impairment "substantially limits" his ability to participate in a major life activity; it need only "limit" his ability to do so.
The parties contest whether Wittkopfs vision impairment brought him within FEHA's definition of an individual with a disability. Wittkopf asserts that FEHA requires only that he show his monocular vision "limits" his ability to participate in a major life activity, not that it "substantially limits" his ability to do so.
The County forthrightly concedes that, if Wittkopfs case "arose today, there is no question that it would be error to require him to show a substantial limitation of a major life activity, rather than a simple limitation...." The County's concession, however, is premised on its contention that recent amendments to FEHA effected a "radical change" in the substantive law of disability discrimination in California, and that those amendments do not govern the result in this case which was pending when they became effective. In short, the County argues that the standard that governs whether Wittkopf qualifies as a disabled person under FEHA is the same as the standard under the ADA: a physical impairment that substantially limits at least one major life activity.
Wittkopf argues the FEHA standard has always been less onerous, because it does not require that the limitation on a major life activity be "substantial." He also asserts that the recent amendments to FEHA effected no substantive change in the law, but merely clarified the statute's true meaning. Thus, to determine whether Wittkopfs vision impairment brought him within FEHA's definition, we must first consider whether recent amendments to that statute govern an action filed before they took effect.
It is a well-established principle that "[s]tatutes only operate prospectively unless the Legislature clearly intends retroactive application." (Bank of America v. Angel View Crippled Children's Foundation (1999) 72 Cal.App.4th 451, 457, 85 Cal.Rptr.2d 117.) Such intent may be gleaned from the statute's "`express language or clear and unavoidable implication,'" [citation] or may be "`suggested or implied by the wording of the [statute],'" or "`inferred from the legislative history or context of the enactment.'" [Citation.] (Ibid.) There is an exception to this general rule: even without a clear expression by the Legislature that retrospective application is intended, a statute may be applied retroactively if the amendment were merely an attempt to clarify existing law. "[A] court may find from its consideration of the surrounding circumstances `that the Legislature made material changes in statutory *549 language in an effort only to clarify a statute's true meaning. [Citations.] Such a legislative act has no retrospective effect because the true meaning of the statute remains the same.' [Citation.]" (Murray v. Oceanside Unified School Dist. (2000) 79 Cal.App.4th 1338, 1354, 95 Cal.Rptr.2d 28.) This exception governs this action. For the reasons set forth below, based on the findings and declarations in a provision of FEHA enacted in 2000, Government Code section 12926.1, we conclude that the recent amendment to FEHA did not effect a "radical change" in California's disability civil rights law. On the contrary, the change was intended merely to clarify the existing statutory definition of physical disability.
When Wittkopf was terminated in 1998, FEHA defined physical disability, in pertinent part, as any physiological disorder or condition that affects an enumerated body system, including the special sense organs, and "[l]imits an individual's ability to participate in major life activities." (Former Gov.Code, § 12926, subd. (k), Stats. 1992, ch. 913, § 21.3, pp. 4307-308, emphasis added.) As written, section 12926 omitted any mention of the "substantial" limitation on a person's ability to participate in major life activities required by federal law. In contrast to the language in FEHA, an individual is "disabled" under the ADA's definition only if he or she has "a physical or mental impairment that substantially limits one or more of the major life activities of such an individual," or has a record of or is regarded as having such an impairment. (42 U.S.C. § 12102(2)(A)(C), italics added.)
Notwithstanding the significant gap in the language of these two statutes, a number of courts have mistakenly equated FEHA's standard with the more exacting definition in the ADA. (See, e.g., Hobson v. Raychem Corp. (1999) 73 Cal.App.4th 614, 627, 86 Cal.Rptr.2d 497 [former section 12926, subd. (k) adopted the ADA's requirement that a physical impairment is not a covered disability unless it substantially limits one's participation in a major life activity]; Gosvener v. Coastal Corp. (1996) 51 Cal.App.4th 805, 813, 59 Cal. Rptr.2d 339 [FEHA incorporates ADA's definition of physical disability]; Diffey v. Riverside County Sheriffs Department (2000) 84 Cal.App.4th 1031, 1035-1036, 101 Cal.Rptr.2d 353 [To qualify as a disability, both "the ADA and FEHA require that an impairment ... substantially limit a major life activity."].)
In large measure, the judicial equation of the state and federal standards derives from a misreading of the Supreme Court's decision in Cassista v. Community Foods (1993) 5 Cal.4th 1050, 22 Cal.Rptr.2d 287, 856 P.2d 1143. There, the Court examined the historical development of disability law in California, recognizing that FEHA's 1992 definition of disability was based on the ADA's definition. (5 Cal.4th at p. 1056, fn. 6, 22 Cal.Rptr.2d 287, 856 P.2d 1143.) In an attempt to harmonize a 1992 FEHA amendment with the statute's older implementing regulations and to maintain continuity in the law, the Court concluded the definition of disability in FEHA was "substantially similar" to the definition of a "handicapped individual" contained in a 1988 regulation-one who "has a physical handicap which substantially limits one or more major life activities." (Cassista, supra, 5 Cal.4th at p. 1060, 22 Cal.Rptr.2d 287, 856 P.2d 1143.)
As the County points out, Cassista does contain language which implies that a substantial limitation is required under FEHA: "the result is that our statute [section 12926] has finally caught up with its implementing regulation; the new definition of `disability' in section 12926, subdivision (k), and the long-standing interpretation *550 of `handicap' in the California Code of Regulations (Cal.Code Regs., tit. 2, § 7293.6) are in harmony. Each requires an actual or perceived physiological disorder ... affecting one or more of the body's major systems and substantially limiting one or more major life activities." (Id. at p. 1060, 22 Cal.Rptr.2d 287, 856 P.2d 1143, italics added.)
This statement, however, was dicta. The Cassista Court went on to hold: "Thus, it is a relatively simple matter to harmonize the current and former versions of section 12926. Under both, the touchstone of a qualifying ... disability is an actual or perceived physiological disorder which affects a major body system and limits the individual's ability to participate in one or more major life activities." (Id. at p. 1061, 22 Cal.Rptr.2d 287, 856 P.2d 1143, emphasis added.) Based on the clear language in FEHA, and the holding in Cassista, we conclude that, even before its recent amendment, the statutory definition of physical disability under FEHA did not require a plaintiff to demonstrate more than that his physiological impairment limits his ability to participate in a major life activity.
This conclusion is strengthened by two events. First, notwithstanding the admittedly confusing language in Cassista, FEHA's implementing regulations were amended shortly after that decision to their current form. Thus, since 1995, this state's administrative regulations have defined a "physical disability" as a physiological condition, etc., which affects an enumerated body system and "[l]imits an individual's ability to participate in major life activities." (Cal.Code Regs., tit. 2, § 7293.6, subd. (e)(1)(A)(1)-(2), italics added.)
Second, in 2000, the Legislature substantially revised the disability provisions of FEHA. Among other things, section 12926.1 was added to clarify the definition of physical disability. In pertinent part, section 12926.1 provides: "The Legislature finds and declares as follows: [¶] (a) The law of this state in the area of disabilities provides protections independent from those in the federal [ADA]. Although the federal act provides a floor of protection, this state's law has always, even prior to passage of the federal act, afforded additional protections. [¶] (b) The law of this state contains broad definitions of physical disability.... It is the intent of the Legislature that the definition[ ] of physical disability ... be construed so that applicants and employees are protected from discrimination due to an actual or perceived physical ... impairment that is disabling, potentially disabling, or perceived as disabling or potentially disabling. [¶] (c) ... In addition, the Legislature has determined that the definitions of "physical disability" and "mental disability" under the law of this state require a "limitation" on a major life activity, but do not require, as does the Americans with Disabilities Act of 1990, a "substantial limitation." This distinction is intended to result in broader coverage under the law of this state than under that federal act. ..." (Italics added.)
Because, both before and after its amendment in 2000, FEHA's definition of physical disability requires only a mere limitation, and not a substantial one, we conclude that the amendments and addition of section 12926.1 were intended only to clarify existing law on these points.[1] *551 Accordingly, because the essential meaning of the term "physical disability" has not changed, the recently clarified statute has no true retrospective effect. (Western Security Bank v. Superior Court (1997) 15 Cal.4th 232, 243, 62 Cal.Rptr.2d 243, 933 P.2d 507 ["An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute."][2] [Citation, quotation and fn. Omitted.]; Murray, supra, 7
9 Cal.App.4th at p. 1354, 95 Cal. Rptr.2d 28.)
Having determined that FEHA's statutory definition has not changed, we need not devote substantial discussion to the question of whether Wittkopfs monocular vision qualifies him as physically disabled under that definition. It is undisputed that Wittkopfs monocular vision constitutes a qualifying physiological condition that affects one of his "special sense organs." (Gov.Code, § 12926, subd. (k)(1)(A).) The second prong of the definition requires Wittkopf to demonstrate that his impairment limits his ability to participate in at least one major life activity. FEHA's implementing regulations define "major life activities" as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." (Cal. Code Regs., tit. 2, § 7293.6, subd. (e)(2)(a), italics added.) In opposition to the County's motion, Wittkopf produced evidence that his legal blindness affects his depth perception and his peripheral vision, and renders him unable to participate in certain activities, including night driving. These limitations on Wittkopfs ability to see are sufficient to qualify him as an individual with a disability under FEHA. Accordingly, we conclude that the trial court erred in granting judgment in the County's favor on this basis.[3]

*552 2. Factual issues remain with regard to the claim of "failure to promote."
Wittkopf also contends the trial court erred when, in granting summary judgment in favor of the County, it implicitly rejected his claim that the County discriminated against him when it refused to accommodate his disability by promoting him to his retiring supervisor's position. We conclude that a number of legal and material factual issues preclude resolution of this issue as a matter of law on appeal.
In the first place, before a court may reach the question of whether a promotion was an appropriate accommodation for Wittkopf, it must first resolve the predicate issue of whether there was a legitimate basis for removing Wittkopf from his position at all, an issue which has not yet been addressed, but which will surely arise almost immediately on remand. Thus, we set forth the following discussion to guide the trial court in future proceedings in this case.
Under FEHA, an employer may discharge a disabled employee if "the employee, because of his or her physical ... disability, is unable to perform his or her essential duties even with reasonable accommodation, or cannot perform those duties in a manner that would not endanger his or her health or safety ... even with reasonable accommodations." (Gov. Code, § 12940, subd. (a)(1).)
The problem presented here is that Wittkopf has not sought, nor does he appear to require, any accommodation to perform his job as Senior Building & Equipment Maintenance Worker. Indeed, as his unblemished employment history attests, it is undisputed that, even with his disability, Wittkopf has been well able to perform all the duties of his job without incident or need for accommodation. Notwithstanding his good performance, the County claims it had "no alternative" but to remove Wittkopf from his job to protect his safety. That decision was premised solely on Aronberg's opinion that the job duties performed by a person in Wittkopfs position posed too great a risk to the safety of an individual with monocular vision. There is no evidence, however, that Aronberg's opinion was based on an examination of Wittkopf, or on anything other than a job description set forth in someone else's report. There is also no evidence Wittkopf actually experienced or caused any safety problems performing his job, or that his vision impairment interfered with his ability to perform. On the contrary, there is abundant uncontradicted evidence Wittkopf performed his job duties in an exemplary fashion for several years with his vision impairment, and that he did so without apparent risk to his own safety or that of others. In addition, the record also contains letters from Wittkopfs treating physicians freeing him to return, without restriction, to the very position Aronberg said was too dangerous. Based on this record, we conclude there is a material factual issue as to whether the County has persuasive evidence to support its conclusion that retaining Wittkopf in his position would subject him to harm.[4]
FEHA's "danger to self defense has a narrow scope; an employer *553 must offer more than mere conclusions or speculation in order to prevail on the defense. (See Sterling Transit Co. v. Fair Employment Practice Com. (1981) 121 Cal.App.3d 791, 798-799, 175 Cal.Rptr. 548 [Employer's conjecture that disabled employee might endanger his health sometime in the future is insufficient to overcome strong public policy of providing equal employment opportunity or to justify the employer's refusal to employ a disabled individual].) Both public and private employers may prescribe safety limitations. (Cal.Code Regs., tit. 2, § 7293.8, subds. (c)-(f).) However, such limitations must have a rational basis, and must be supported by analytical factual data rather than stereotypical generalizations. (McMillen v. Civil Service Com. (1992) 6 Cal.App.4th 125, 130, 8 Cal.Rptr.2d 548.) As one court said, "[t]he defense requires that the employee face an `imminent and substantial degree of risk' in performing the essential functions of the job." (Jimeno v. Mobil Oil Corp. (9th Cir.1995) 66 F.3d 1514, 1534 [citation].) An employer may not terminate an employee for harm that is merely potential. Stated differently, "it is no defense to assert that an individual with a disability has a condition ... with a future risk, so long as the condition ... does not presently interfere with his or her ability to perform the job in a manner that will not immediately endanger the individual with a disability or others, and the individual is able to safely perform the job over a reasonable length of time. A `reasonable length of time' is to be determined on an individual basis." (Cal.Code Regs., tit. 2, § 7293.8, subd. (e).) In addition, in cases in which the employer is able to establish the "danger to self defense, it must also show that there are "no `available reasonable means of accommodation which would, without undue hardship to [the employer], have allowed [the plaintiff] to perform the essential job functions ... without danger to himself.' [Citation.]" (Jimeno, supra, 66 F.3d at p. 1534.)
Thus, on remand, before the trial court may reach the merits of the parties' arguments as to whether the promotion Wittkopf sought was a reasonable accommodation for his disability, it must first be shown that an accommodation was required, and that the County's safety and cost concerns were legitimate.

3. Wittkopfs claim of discrimination with regard to the County's initial refusal to reinstate him in 1996 is time-barred.
"The timely filing of an administrative complaint, and exhaustion of that remedy, is a prerequisite to maintenance of a civil action for damages under the FEHA." (Balloon v. Superior Court (1995) 39 Cal.App.4th 1116, 1120, 46 Cal.Rptr.2d 161.) The law is quite clear that, if an employee has failed to file an administrative charge specifically identifying the alleged discrimination within one year of the time at which the alleged discrimination occurred, a subsequent lawsuit is barred. (Govt.Code, § 12960; Okoli v. Lockheed Technical Operations Co. (1995) 36 Cal. App.4th 1607, 1617, 43 Cal.Rptr.2d 57.) It is undisputed that the administrative complaint filed by Wittkopf in July 1998 never mentioned any instance of discrimination other than his termination in April 1998. On this basis alone, summary adjudication was properly granted with respect to Wittkopfs claim that the County discriminated against him on the basis of his disability when it refused to reinstate him in 1995. (Okoli, supra, 36 Cal.App.4th at p. 1617, 43 Cal.Rptr.2d 57; Keiffer v. Bechtel Corp. (1998) 65 Cal.App.4th 893, 897, 76 Cal. Rptr.2d 827.)
*554 Wittkopf, however, argues his claim of discrimination remains viable by virtue of the equitable "continuing violation" doctrine. Under that theory, a FEHA claim is not time-barred if "there are continuous acts of discrimination over a period of time provided that some of those acts fall within the limitations period." (Accardi v. Superior Court (1993) 17 Cal.App.4th 341, 345, 21 Cal.Rptr.2d 292.) Accardi does not assist Wittkopf.
The continuing violation doctrine was developed to address circumstances in which there were repeated acts or was a continuous pattern of harassment over a period of years. In Accardi the court found that such acts were so common and entrenched as to be tantamount to a "systematic policy of discrimination." (Id., at p. 349, 21 Cal.Rptr.2d 292.) However, the defining characteristic of such cases is that the discriminatory character of the acts only becomes manifest in light of later events. "[T]he core idea of the continuing violations theory ... is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a [claim of discrimination] are or should be apparent to the reasonably prudent person...." (Huckabay v. Moore (5th Cir.1998) 142 F.3d 233, 238.) This is not such a case.
Here, Wittkopf complains about two discrete egregious acts of discrimination that took place almost three years apart. The fact that both acts were allegedly motivated by an identical discriminatory animus the County's desire to be rid of a monocular employee does not bring the earlier claim under the umbrella of the continuing violation doctrine. We are persuaded by the reasoning of the Seventh Circuit: "If [a person] knows or with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed him, he may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one." (Moskowitz v. Trustees of Purdue University (7th Cir. 1993) 5 F.3d 279, 281.) In this respect, we agree with the County. The discriminatory nature of the County's refusal to reinstate Wittkopf after his surgery was apparent in 1995, and his awareness of that fact is evidenced by his retention of counsel to negotiate his reinstatement. At that time, Wittkopf chose not to pursue a claim of discrimination within the time allotted for such action. He is now time-barred from doing so.

DISPOSITION
The judgment is affirmed as to the claim for discriminatory refusal to reinstate Wittkopf in 1995. In all other respects, the judgment is reversed. Wittkopf is awarded his costs on appeal.
JOHNSON, Acting P.J., and WOODS, J., concur.
NOTES
[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] We are aware a different result was recently reached on this issue in Colmenares v. Braemar Country Club, Inc. (2001) 89 Cal.App.4th 778, 107 Cal.Rptr.2d 719. Respectfully, we disagree with that decision. In concluding that the language of the 2000 amendment implied a legislative intention that, for cases filed after January 2001, FEHA's definition of physical disability would depart dramatically from the path it had shared with the ADA, Colmenares ignores the explicit legislative recognition that, at and before the time of this amendment, the law in California "in the area of disabilities provide[d] protections independent from those in the [ADA]," and had "always" done so. (Gov.Code, § 12926.1, subd. (a).)

Moreover, in concluding that the 2000 amendment created a new definitional "distinction" between FEHA which requires a mere "limitation" on one's ability to participate in one or more major life activities and the ADA which has always required such a limitation be "substantial" which the Legislature intended to apply only "in a time yet to come," Colmenares also ignores the fact that this very "distinction" has always existed in the language of the two statutes. For the reasons discussed above, we conclude that the true definition of physical disability in FEHA remains unchanged. Now, as before, a plaintiff need demonstrate only that his physical disability impairs at least one major life activity.
[2] The Legislative enactment followed a number of decisions in which courts dealt with the definition of disability under FEHA. (See, e.g., Hobson v. Raychem Corp., supra, 73 Cal. App.4th 614, 86 Cal.Rptr.2d 497, Gosvener v. Coastal Corp., supra, 51 Cal.App.4th 805, 59 Cal.Rptr.2d 339, and Diffey v. Riverside County Sheriffs Department, supra, 84 Cal.App.4th 1031, 101 Cal.Rptr.2d 353 [all of which interpreted the meaning of "physical disability" under FEHA]; Jensen v. Wells Fargo Bank (2000) 85 Cal.App.4th 245, 102 Cal.Rptr.2d 55, and Midler v. Automobile Club of So. California (1998) 61 Cal.App.4th 431, 71 Cal. Rptr.2d 573 [interpreting "mental disability"]-)
[3] Because we have concluded that Wittkopfs actual disability places him within the class of persons protected by FEHA, we need not address the parties' arguments with respect to whether the County also regarded Wittkopf as disabled. (Gov.Code, § 12926, subds.(k)(4), (5).)
[4] Although the parties have not yet addressed this point, evidence in the record indicates that one of the reasons driving Wittkopfs termination was the County's concern that his retention would expose it to liability. However, absent a showing that its concerns are specifically related to job ability and safety, an employer may not rely on the possibility of undetermined future financial harm to justify discriminatory employment practices. (Sterling Transit Co. v. Fair Employment Practice Comm'n (1981) 121 Cal.App.3d 791, 799-800, 175 Cal.Rptr. 548.)