JOYCE E. TATUM

v.

## HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA

Civil Action No. 98–6198.

United States District Court,
E.D. Pennsylvania.

July 16, 1999.

---

146

J. Matthew Wolfe, Law Offices of J. Matthew Wolfe, Philadelphia, PA, for plaintiff.

Kristine M. Derewicz, Buchanan Ingersoll Professional Corp., Philadephia, PA, for defendant.

### MEMORANDUM OF DECISION

RUETER, United States Magistrate Judge.

Plaintiff, Joyce E. Tatum, brought this action pursuant to the Americans with Disabilities Act of 1990, ("ADA" or "Act"), 42 U.S.C. § 12101, *et seq.* Plaintiff alleges that defendant, the Hospital of the University of Pennsylvania ("Hospital"), refused to accommodate her disability, and later terminated her employment because of her disability. By Memorandum and Order dated June 24, 1999, the Honorable Edmund V. Ludwig granted defendant's motion for summary judgment on the plaintiff's claim that defendant violated the ADA by terminating her employment. The parties consented to have the remaining claim, the refusal to accommodate claim, tried before the undersigned pursuant to 28 U.S.C. § 636(c).

On July 14 and 15th, 1999, this court conducted a jury trial. Plaintiff presented her testimony, and the videotaped deposition of Albert Cooke, M.D. After plaintiff rested her case, defendant made a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. For the reasons that follow, the court grants the motion.

### I. STANDARD OF REVIEW

A motion for judgment as matter of law can be granted "only if, viewing the evidence in light most favorable to the non-movant and, giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Jaguar Cars Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 269 (3d Cir.1995). In making such a determination, the "court may not weigh the evidence, determine the credibil-

ity of witnesses, or substitute its version of the facts for the jury's version." While a "scintilla of evidence is not enough to sustain a verdict of liability," the question is "whether there is evidence upon which the jury could properly find a verdict for that party." *Id.* at 269 (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir.1993)).

## II. PLAINTIFF'S EVIDENCE

Viewing the evidence in the light most favorable to plaintiff, the trial evidence was that since the early 1970s, plaintiff worked as a nurse's assistant at the Hospital. Beginning in 1973, she developed a Bartholin cyst.[1] Plaintiff alleges that this cyst sporadically causes her severe pain, especially when she lifts heavy objects. Although plaintiff admits that "the essential functions of a nursing assistant position include, among other things, lifting and pulling heavy patients, bathing patients, taking heights and weight of patients, and lifting patients in and out of bed," plaintiff testified she was able to perform these functions from 1973 through 1995, because the Hospital accommodated her by providing her assistance when lifting patients. Amended Pretrial Stipulation (Doc. No. 13) at 1. Plaintiff did not elaborate any further on the accommodations, nor did she testify as to how often she needed assistance from others. Plaintiff testified that in 1994, she complained to her then supervisor, Elizabeth Craig, R.N., that she was experiencing difficulty lifting and pulling heavy patients. She testified that she told Ms. Craig about a note she procured in 1978, from an unnamed emergency room physician at the University of Pennsylvania, who opined that plaintiff was unable to pull or lift heavy patients. Ms. Craig informed plaintiff that the Hospital had no record of this note, and therefore instructed her to obtain a note from plaintiff's gynecologist Lilbourne Parrot, M.D., who treated plaintiff for a period of time prior to September 1994. Plaintiff secured a note from Dr. Parrot dated September 21, 1994, which was written on Dr. Parrot's prescription pad.[2] The note simply stated: "Mrs. Tatum is unable to lift or pull heavy patients." No additional information was provided. Two weeks after receiving the note, Ms. Craig instructed plaintiff that Dr. Parrot needed to provide further information.

Plaintiff returned to Dr. Parrot, and requested a more detailed note. According to plaintiff, Dr. Parrot informed her that she did not need another note. Subsequently, plaintiff informed Ms. Craig what Dr. Parrot had indicated. A few months later, Ms. Craig gave plaintiff a Physical Capabilities Form, and told her to have Dr. Parrot complete the form. Plaintiff informed Ms. Craig that she took this form to Dr. Parrot, who informed her that he would not complete this form because "she could work."[3] Ms. Craig then suggested that Ms. Tatum take the form to the Occupational Health Department at the Hospital. Ms. Tatum testified that she took the form to a nurse/practitioner at the Occupational Health Department, who informed her that she did not need to fill out the form, because plaintiff was under the care of a physician. When plaintiff informed Ms. Craig of this, Ms. Craig next suggested that she take the form to her family physician, Dr. Harrison Gratz. She returned to Ms. Craig and explained that Dr. Gratz would not fill out the form. "At no time did Tatum get the capabilities form

---

1. A Bartholin cyst is an "abnormal sac containing gas, fluid, or a semisolid material, with a membranous lining, ... arising from the major vestibular gland or its ducts." *Stedman's Medical Dictionary* at 429–30 (26th ed.1995).

2. Plaintiff's Exhibit No. 1, written on Dr. Parrot's prescription pad, measures approximately three and one-half by four and one-half inches.

3. In addition to testifying to this at trial, plaintiff also stipulated to this fact. *See* Amended Pretrial Stipulation at 2 ("Tatum informed Ms. Craig that Dr. Parrot refused to complete the forms because Tatum could work.").

completed or provide any further documentation of her medical condition to HUP." Amended Pretrial Stipulation at 2.

On the evening of March 29, 1995, plaintiff reported to work at the Hospital. She informed the duty nurse that she could not lift patients by herself. The duty nurse spoke to the evening coordinator, Catherine Beer, who then spoke with plaintiff. Ms. Tatum informed Ms. Beer that she could not lift patients without assistance. Ms. Beer was unaware of these restrictions, and informed plaintiff that she would speak with plaintiff's immediate supervisor, Ms. Craig, who was at home. After speaking with Ms. Craig, Ms. Beer told plaintiff that she was required to perform a normal assignment, and if she refused, she should leave the Hospital, and not be paid for her time.[4] Plaintiff chose to go home. The following day, plaintiff returned to work, and was notified that she was suspended for three days without pay for failure to perform her assignment. Between April 1995 and August 1995, plaintiff continued to work. Plaintiff's employment was terminated on or about August 7, 1995, for reasons not pertinent to the disposition of this motion.

Dr. Albert Cooke, plaintiff's expert, testified that he examined plaintiff on April 28, 1999. During the pelvic examination, Dr. Cooke noted a preexisting inflammatory condition, although he did not positively detect the existence of a Bartholin cyst. He further stated that he could not determine whether she had this condition in 1995, although he stated that such a condition is consistent with plaintiff's description of the pain she experienced in 1995.

### III. DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

In its Rule 50 motion, defendant argued that plaintiff failed to prove that she suffered from a disability in September 1994, that was protected by the ADA. Additionally, defendant averred that plaintiff did not show that the Hospital failed to participate in the interactive process when informed of plaintiff's request for accommodation in September 1994. Although the defendant raises a serious question as to whether plaintiff is disabled under the Act, this court need not address this question, since no jury could reasonably find for the plaintiff on her claim that defendant failed to participate in the interactive process of addressing plaintiff's request for a reasonable accommodation.

### IV. DISCUSSION

■ Recently, the Third Circuit set forth what is required of an employee and an employer during the interactive process. The court stated the following: "To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Taylor v. Phoenixville School District*, 174 F.3d 142, 165 (3d Cir.1999). At trial, plaintiff failed to prove the third element, i.e., the Hospital's lack of good faith.

■ Plaintiff concedes that Ms. Craig acted reasonably when she requested more information from Dr. Parrot regarding plaintiff's disability. Dr. Parrot's cryptic note of September 21, 1994 did not describe in detail the nature of the disability, its cause, whether the disability was permanent or temporary, or what treatments plaintiff was receiving. In short, the note did not provide sufficient information to determine whether the disability was protected under the ADA. Furthermore, Dr.

---

4. *See* Amended Pretrial Stipulation at 2–3 ("The evening coordinator telephoned Ms. Craig at home to determine whether Tatum was restricted in her ability to perform the functions of the nursing assistant position, and Craig stated that there were no current restrictions.").

Parrot provided no details as to the restrictions needed to accommodate plaintiff's disability. For example, there is no information as to the amount of weight plaintiff was restricted from lifting.[5] The only clarifying information provided to Ms. Craig by plaintiff regarding Dr. Parrot's opinion, was that Dr. Parrot indicated that plaintiff "could work." The Third Circuit has clearly held that a plaintiff must provide her employer with sufficient information regarding her disability. After receiving a request for an accommodation, an employer has the right and obligation to request additional information the employer believes it needs. *Taylor*, 174 F.3d at 160–62. "[A]n employer cannot be faulted if after conferring with the employee to find possible accommodations, the employee fails to supply information that the employer needs or does not answer the employer's request for more detailed proposals." *Id.* at 162. *See also Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir.1998) (employee's failure to provide medical information necessary to the interactive process preludes her from claiming that the employer violated the ADA by failing to provide reasonable accommodation).

■ Plaintiff has not shown that the Hospital did not make a good faith effort to assist plaintiff in seeking an accommodation once it received notice of plaintiff's alleged disability. On the contrary, Ms. Craig, acting on behalf of the Hospital, did demonstrate good faith in trying to address plaintiff's request for accommodation. First, when plaintiff orally notified Ms. Craig of the restrictions in September 1994, Ms. Craig immediately requested that plaintiff procure a note from her treating physician. When Ms. Craig received the insufficient note from Dr. Parrot, Ms. Craig requested plaintiff to get a more detailed letter from her physician. When plaintiff informed Ms. Craig that Dr. Parrot stated that she did not need another note, Ms. Craig gave plaintiff a Physical Capabilities Form to be completed by Dr. Parrot. When plaintiff informed Ms. Craig that Dr. Parrot would not complete the form because "plaintiff could work," Ms. Craig did not stop there, but took the further step of suggesting that plaintiff visit the Hospital's Occupational Health Department. When plaintiff told Ms. Craig that the department told her that she need not have this form completed because she was under a doctor's care, Ms. Craig suggested that plaintiff have the form completed by her family physician, Dr. Gratz.

■ The Third Circuit in *Taylor* suggested that employers "can show their good faith in a number of ways, such as taking steps like the following: meet with the employee who requested an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome." *Id.* at 162. It is undisputed that the Hospital took the first two steps, but plaintiff did not provide the necessary medical information. Thus, the Hospital could not proceed further in the interactive process. Plaintiff has not shown that prior to the termination of her employment, the Hospital foreclosed any further discussion as to her disability, or otherwise refused to consider any further proof of her need for a reasonable accommodation.[6] No reasonable jury

5. For example, the note merely says plaintiff cannot "lift or pull heavy patients." It is unclear as to whether plaintiff is capable of working with infants, young adults, or non-obese patients.

6. The ADA does not require an employer to "move with maximum speed" to complete the interactive process. The employer is entitled to move at whatever pace it chooses "as long as the ultimate problem—the employee's performance of her duties—is not truly imminent." *Loulseged v. Akzo Nobel, Inc.* 1999 WL 393657 at *4 (5th Cir. June 16, 1999).

could find the Hospital at fault for the breakdown in the interactive process, or for requiring plaintiff to work her normal duties on March 29, 1995. The defendant had a large hospital to run, with numerous employees, and could not excuse plaintiff from her normal work without some proof of her disability. The Hospital gave plaintiff at least four opportunities to produce the required information, and she failed to produce it. What more should the Hospital have done? As the Fifth Circuit stated: "One cannot negotiate with a brick wall." *Loulseged*, 178 F.3d 731, 737. Clearly, the Hospital did not violate the ADA by requiring plaintiff to perform normal duties until she provided the requisite information.

Although the Third Circuit in *Taylor* gave examples of how an employer can show its good faith, it never precisely defined the term "good faith." In other contexts, our Court of Appeals has adopted the definition found in Black's Law Dictionary to define "good faith" as encompassing, "an honest belief, the absence of malice, and the absence of a design to defraud." *See Commonwealth v. United States Dept. of Health and Human Serv.*, 928 F.2d 1378, 1384 (3d Cir. 1991) (quoting *Black's Law Dictionary* at 693 (6th ed.1990)). Similarly, *Black's* defines "bad faith" as "the opposite of good faith, generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Black's Law Dictionary* at 139. No reasonable jury could find that the Hospital acted in bad faith under this definition, when engaging in the interactive process with the plaintiff.

## V. CONCLUSION

Accordingly, for all of the above reasons, this court will enter judgment in favor of defendant, the Hospital of the University of Pennsylvania, and against plaintiff, Joyce E. Tatum, on her remaining claims under the Americans with Disabilities Act. A judgment order follows.

### *JUDGMENT ORDER*

AND NOW, this 16th day of July, 1999, in accordance with the Memorandum of Decision filed this day, it is hereby

### ORDERED

that judgment is entered in favor of defendant, the Hospital of the University of Pennsylvania, and against plaintiff, Joyce E. Tatum on all claims of the Complaint.